UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | CASE NO. | 12-31801 (JAM) |
| ANTHONY R. VIGILOTTI AND TENNILLE P. VIGILOTTI | CHAPTER | 7 |
| DEBTORS. | | |
| EMPLOYERS MUTUAL CASUALTY COMPANY | ADV. PRO. NO. | 12-03079 |
| PLAINTIFF | ECF Nos. | 26, 38 |
| vs. | | |
| ANTHONY R. VIGILOTTI AND TENNILLE P. VIGILOTTI | | |
| DEFENDANTS. | | |

**APPEARANCES**

Matthew M. Horowitz, Esq.          Attorneys for Plaintiff
Wolf, Horowitz & Etlinger LLC
99 Pratt Street, Suite 401
Hartford, CT 06106

Maura Z. Pelleteri, Esq. (Pro Hac Vice)
Krebs, Farley & Pelleteri
400 Poydras Street, Suite 2500
New Orleans, LA 70130

Christopher J. Weema, Esq. (Pro Hac Vice)
Krebs, Farley & Pelleteri
400 Poydras Street, Suite 2500
New Orleans, LA 70130

Gregory F. Arcaro, Esq.          Attorney for Defendant
Grafstein & Arcaro LLC
10 Melrose Drive
Farmington, CT 06032

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

Julie A. Manning, Chief United States Bankruptcy Judge

### I. Introduction

Employers Mutual Casualty Company (the "plaintiff"), seeks to have a debt arising from the granting of summary judgment and the subsequent judgment in the amount of $1,820,338.39 plus interest from the date of judgment, entered by the United States District Court for the Middle District of Louisiana (the "Louisiana Judgment"), declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The Louisiana Judgment was entered jointly, severally and *in solido* against Anthony R. Vigilotti and Tennille P. Vigilotti (the "defendants"), and a third entity not a party to this adversary proceeding.

The plaintiff has moved for summary judgment, arguing that the Louisiana Judgment should be afforded preclusive effect by this court on its nondischargeability claim under 11 U.S.C.§ 523(a)(2)(B), and that the undisputed facts entitle the plaintiff to summary judgment in this case. For the reasons below, the plaintiff's motion is **GRANTED**.

### II. Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).[1]

### III. Procedural History

On August 3, 2012, the defendants filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.

---

[1] 11 U.S.C. § 157(b)(2) states in relevant part that "[c]ore proceedings include, but are not limited to . . . (I) determinations as to the dischargeability of particular debts."

2

On November 9, 2012, the plaintiff initiated the instant adversary proceeding by filing a complaint (the "Complaint").[2] The Complaint seeks a declaration that the plaintiff's debt is nondischargeable, in whole or in part, under the provisions of 11 U.S.C. § 523(a)(2)(B).

On May 28, 2013, the plaintiff filed a motion for summary judgment (the "Motion"), arguing that the collateral estoppel effect of the Louisiana Judgment entitles it to judgment as a matter of law on all counts of the Complaint. On July 15, 2013, the defendants filed their opposition to the Motion. On July 22, 2013, the plaintiff filed its reply. The issues have been thoroughly briefed and the Motion is now ripe for decision.

### IV. Undisputed Facts

A review of the Motion and documents appended thereto, the defendants' opposition and documents appended thereto, the parties' Rule 56(a) Statements, and the examination of the record in the bankruptcy case and adversary proceeding, establishes the undisputed facts set forth below for the purposes of ruling on the Motion.

The defendants wholly owned and operated JVV, a commercial construction business in Louisiana. In order to submit bids and perform work on certain construction and building projects, JVV was required to obtain payment and performance bonds. JVV and the defendants requested that the plaintiff, a commercial surety company, issue bonds naming JVV as principal and various public entities as obligees.

On June 26, 2009, the defendants executed a General Application and Agreement of Indemnity ("GAI") in favor of the plaintiff, in which the defendants agreed to "exonerate, indemnify, and keep indemnified [the plaintiff] from and against any and all liability for losses

---

[2] All references to documents appearing on the docket of the instant adversary proceeding will appear as: ECF ___.

and/or expenses of whatsoever kind or nature (including but not limited to interest, court costs and counsel fees)."

In connection with the signing of the GAI, it is uncontested that the defendants provided inaccurate written information to the plaintiff concerning the defendants' financial condition. It is also uncontested that JVV defaulted on six (6) bonded projects, and failed to pay numerous subcontractors and suppliers to those projects. The plaintiff was then called upon to stand in JVV's place under the bonds it had issued and incurred significant losses thereby. The plaintiff further incurred losses as a result of JVV's defaults and the defendants' subsequent failures to indemnify and post collateral with the plaintiff.

On February 11, 2011, the plaintiff filed suit against the defendants for indemnity and other relief in United States District Court for the Middle District of Louisiana in a case captioned *Employers Mutual Casualty Company v. JVV Consulting-Construction Management, L.L.C., et al.*, Case No. 3:11-cv-79-JJB-SCR (hereinafter the "Louisiana District Court Action").

On March 10, 2011, the plaintiff amended its complaint in the Louisiana District Court Action to assert additional claims, including, *inter alia*, a claim for "misrepresentation in the inducement to issue bonds."

On March 24, 2011, the defendants filed their answer to the plaintiff's original complaint and also asserted a counterclaim. On April 12, 2011, the defendants filed their answer to the plaintiff's amended complaint. It is uncontested that the defendants continued to participate in the Louisiana District Court Action for several months after the filing of their answer. It is further uncontested that the defendants failed to respond to the plaintiff's discovery requests in the Louisiana District Court Action.

4

On September 15, 2011, the defendants' counsel filed a motion to withdraw from the case. Included in the motion was an affirmative representation regarding the specific address to which service of court documents on the defendants should be made. The motion to withdraw was granted on September 19, 2011.

On January 9, 2012, the plaintiff filed its motion for summary judgment. On March 26, 2012, the Louisiana District Court granted the plaintiff's motion for summary judgment, noting in its memorandum of decision that "[b]ecause the defendants have failed to [provide the court with an accurate address], . . . notices to the defendants on motion [sic] for summary judgment that were mailed informing them of the January 30, 2012 deadline for the opposition were returned as undeliverable . . . [and t]he Court therefore treats this motion as unopposed and resorts to the evidence furnished by the plaintiff to determine whether those undisputed facts entitle it to judgment as a matter of law."

In granting the plaintiff's motion for summary judgment, the Louisiana District Court made several findings of fact and conclusions of law in its memorandum of decision dated March 26, 2012. These findings of fact included, *inter alia*:

> [that the d]efendants . . . provided plaintiff [sic] with a document entitled 'Confidential Personal Financial Statement,' making certain representations concerning the [defendant]'s personal financial conditions in order to induce plaintiff [sic] to execute payment and performance bonds on defendants' [sic] behalf[;] . . . [and that t]he single largest asset was real estate valued at $320,000.00, which [the defendants] claimed to own . . . [h]owever, this property was actually owned by Ralph Vigilotti, defendant Anthony Vigilotti's father.

ECF 26-3, Exhibit B to the plaintiff's Motion, at 3.

The conclusions of law of the Louisiana District Court further included, *inter alia*:

> [that the defendant's] losses resulted from the false written representations defendants [sic] made to plaintiff [sic] regarding their financial condition[;] . . . [and that the d]efendants falsified the amount of collateral security they owned,

5

which fraudulently induced plaintiff [sic] to execute as surety the construction bonds for which [the plaintiff] ha[s] been forced to pay.

ECF 26-3, Exhibit B to the plaintiff's Motion, at 8.

On April 10, 2012, the Louisiana District Court entered judgment against the defendants "jointly, severally, and *in solido*, in the amount of $1,820,338.39, plus interest from the date of this judgment until paid."

On August 2, 2012, one day prior to the filing of their August 3, 2012 joint Chapter 7 petition, the defendants dissolved JVV.

V. **Discussion**

A. **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, made applicable the instant matter by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr.D.Conn.2000) (internal citations omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In evaluating a motion for summary judgment, the court is not to weigh the credibility of the matters asserted; it 'cannot *try* issues of fact, but can only determine whether there are issues of fact to be tried.'" *In re Johnson Mem'l Hosp., Inc.*, 470 B.R. 119, 121 (Bankr. D. Conn. 2012)

quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (citations omitted, emphasis in original).

### B. Collateral Estoppel

Collateral Estoppel "bars a party and its privies from relitigating an issue determined by a prior judgment if: '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issues previously litigated was necessary to support a valid and final judgment on the merits.'" *Okemo Mountain, Inc. v. Sikorski (In re Sikorski)*, 239 B.R. 661, 662 (Bankr. D. Conn. 1999) (quoting *National Labor Relations Board v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999)) (ruling, at summary judgment, on the collateral estoppel effect of a prior federal district court judgment grounded in state law and federal diversity jurisdiction on a dischargeability action under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6)).

#### 1. Collateral Estoppel Effect of the Louisiana Judgment

The plaintiff argues that the defendants are collaterally estopped from relitigating the findings of fact issued in the Louisiana District Court Action. Specifically, the plaintiff asserts: (i) the defendants are collaterally estopped from disputing, attacking, or questioning the findings of fact and conclusions of law made by the court in the Louisiana District Court Action because the defendants voluntarily chose not to participate further in that action after dismissing their counsel of record; and (ii) the defendants were afforded a full and fair opportunity to litigate their claims. In order to address the plaintiff's collateral estoppel argument, a review of certain pleadings filed in the Louisiana District Court Action is necessary.

7

### a. Identity of Issues

The first prong of the collateral estoppel analysis, the identity of issues inquiry, requires that the court inquire into the

> ... actual facts found and presented in the prior litigation, and determine 'whether the issues presented by this litigation are in substance the same as those resolved in [the District Court Case]; whether controlling facts or legal principles have [not] changed significantly since the [federal] court judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion.'

*In re Delaney*, 504 B.R. 738, 747-48 (Bankr. D. Conn. 2014) (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)) (internal quotations, brackets in original). Under 11 U.S.C. § 523(a)(2)(B), discharge is unavailable if a debt

> ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by-- ... (B) use of a statement in writing— (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debt is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive ....

11 U.S.C. § 523(a)(2)(B). Thus "[i]n order to prevail under Section 523(a)(2)(B), a creditor must prove by a preponderance of the evidence that a "statement in writing" (1) is materially false; (2) pertains to the debtor's financial condition; (3) is reasonably relied upon by the creditor to extend credit to the debtor; and (4) is made by the debtor with intent to deceive." *In re Bartomeli*, 303 B.R. 254, 270 (Bankr. D. Conn. 2004).

Under Louisiana state law, "a claim of fraudulent inducement, [requires a plaintiff] ... to satisfy all three elements of a fraud action." *Howard v. Louisiana Citizens Prop. Ins. Corp.*, 2010-1302 (La. App. 4 Cir. 4/27/11), 65 So. 3d 697, 704. Specifically, this requires a plaintiff to prove "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury." *Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606

(La. App. 4 Cir. 6/4/14), --- S. 3d ----. The burden of proof applicable to a fraud action under Louisiana law is proof "by a preponderance of the evidence." La. Civ. Code Ann. art. 1957.

In the Louisiana District Court Action, Count 7 of the First Supplemental and Amended Complaint, properly made a part of the record in this matter and appended to the defendants' opposition to summary judgment, specifically contains several allegations of relevance here. Count 7 generally asserts a fraudulent inducement claim by the plaintiff against the defendant "in the inducement to issue bonds." Count 7 specifically alleges that the defendants "provided to [the plaintiff] a Personal Financial Statement, bearing the signatures of [the defendants] . . . which represented that they personally owned specific items . . . and which further made representations as to the values thereof." ECF 38-3, Exhibit C to the defendants' Opposition Memorandum, at 2. Thus, in this particular case, the facts alleged and later found by the Louisiana District Court at summary judgment to be true, dictate that the fraudulent inducement took the specific form of a writing. Accordingly, proving any fraudulent inducement in the case would by necessity also require proof of the writing.

Count 7 next alleges that the plaintiff, "in reliance on the veracity of the representations made by [the defendants] in the Personal Financial Statement . . . executed as surety for JVV the payment and performance bonds on the above described projects." ECF 38-3, Exhibit C to the defendants' Opposition Memorandum, at 2-3. Count 7 further alleges that "[t]he representations made by [the defendants] in the Personal Financial Statement . . . were knowingly and materially false, and the Personal Financial Statement was provided to [the plaintiff] with the intent to deceive [the plaintiff] as to the personal financial condition of [the defendants]" and that the defendants "represented to [the plaintiff] that they wholly owned their personal residence . . . [but the plaintiff] has now learned that said residence is in fact owned by [someone else]." *Id.* at

3. As a result, Count 7 concludes, the plaintiff has incurred losses after being called to pay on the bonds. *Id.*

Due to the similarity between the elements of nondischargeability under 11 U.S.C. § 523(a)(2)(B) and the allegations in Count 7, as well as between the standards of proof applicable to each, the court concludes that the issues between the two suits are sufficiently identical for the collateral estoppel analysis to proceed.

### b. "Actually Litigated", "Actually Decided" and "Adequate Opportunity"

In opposition to the Motion, the defendants argue that none of the factual findings of the Louisiana District Court were actually litigated by the defendants and that therefore those findings are not precluded from trial in this matter.

The plaintiff argues that the "actually litigated" requirement has been met because the defendants had an adequate opportunity to litigate the issues, but decided not to participate after being given that opportunity.

As stated above, one of the four required elements for collateral estoppel to apply to an issue determined in a prior proceeding is that "the issue in the prior proceeding was actually litigated and actually decided [in that prior proceeding.]" *Supra; (In re Sikorski)*, 239 B.R. at 662. On this point, prior decisions of this court have noted,

> [t]he requirement that an issue be "actually litigated" to qualify for collateral estoppel does not imply that preclusion is available only for those issues established after a full evidentiary and adversarial trial. Such a rule would undermine the efficacy of the doctrine since only a relatively small percentage of judicial matters are resolved by full trial process. By the same token, there are certain types of dispositions short of full adversarial trial which should not produce preclusive effect in subsequent litigation, either because such effect would not serve the fundamental purposes of the collateral estoppel doctrine or produce an inequitable result.

> . . .
> The possible disposition permutations in a given case are numerous, and each such disposition is attended by a different level of adversarial "litigation". As a result, a court must resist simply applying a blanket rule based on the appellation assigned the disposition—e.g. *default judgment, summary judgment,* etc.—by the prior court. Rather, each disposition should be addressed on a case-by-case basis. This requires a review of the full record of the prior proceeding, not just the judgment itself.

*In re Wright*, 187 B.R. 826, 833-34 (Bankr. D. Conn. 1995) (italics in original). With specific regard to the collateral estoppel effect of summary judgment dispositions, courts in this circuit have further stated that "[i]ssues decided by summary judgment may be accorded the same preclusive effect as issues decided following a trial." *In re Ahmed*, 359 B.R. 34, 44 (Bankr. E.D.N.Y. 2005).

The defendants, by their own admission, did participate in the Louisiana District Court action, although the extent and import of that participation is a matter of dispute between the parties. However, all parties agree that at a minimum the defendants: (i) were represented by counsel during the case prior to the summary judgment motion; (ii) answered the complaint; (iii) asserted a counterclaim; (iv) engaged in some discovery; and (v) continued to participate in the case for several months following the filing of their answer.

On September 15, 2011, the defendants' counsel filed a motion to withdraw. In the motion to withdraw, the defendants through their counsel represented to the court a specific address where service should be made on the defendants following counsel's withdrawal from the case. The docket in the Louisiana District Court Action, properly attached as an exhibit to the defendants' opposition brief, reflects at least seven (7) different docket entries indicating that after the withdrawal of counsel, service was made on the defendants at the address the defendants had provided to the court, but was returned as undeliverable. In the Louisiana

Judgment, the court explicitly notes this service issue. Under the circumstances of this case, the court concludes that the above conduct is sufficient to satisfy the "actually litigated" requirement in this case without either frustrating the fundamental purposes of collateral estoppel or working an inequitable result, *In re Wright* 187 B.R. at 833-34.[3]

Reference to the content and language of the Louisiana District Court's summary judgment order also confirms that the issues were also actually decided in this case. In that order, the Louisiana District Court unambiguously found that

> [the d]efendants . . . provided plaintiff with a document entitled 'Confidential Personal Financial Statement,' making certain representations concerning the [defendants'] personal financial conditions in order to induce plaintiff to execute payment and performance bonds on defendants' behalf . . . [and t]he single largest asset [listed in the Confidential Personal Financial Statement] was real estate valued at $320,000.00, which [the defendants] claimed to own . . . [h]owever, this property was actually owned by Ralph Vigilotti, defendant Anthony Vigilotti's father.

ECF 26-3, Exhibit B to the plaintiff's Motion, at 3. The Louisiana District Court goes on to explicitly conclude that "[the plaintiff's] losses resulted from the false written representations [the] defendants made to [the] plaintiff regarding their financial condition . . . [and that the d]efendants falsified the amount of collateral security they owned, which fraudulently induced plaintiff to execute as surety on the construction bonds for which they have been forced to pay." *Id.* Thus, the issues were actually decided in the Louisiana District Court Action.

### c. Necessary to the Judgment

As noted above, Count 7 of the Amended Complaint asserts a claim for fraudulent inducement which, under the particular facts of the case, took the form of a writing. The Louisiana District Court, in finding that the plaintiff was entitled to judgment as a matter of law on that claim, had to rule on the allegations of written misrepresentation, intent, reliance and

---

[3] In arriving at this conclusion, the defendants' further arguments that their "limited . . . participation" was insufficient as a matter of law to form the basis for collateral estoppel are not persuasive.

resulting damages, as a final judgment on the claim could not have been arrived at otherwise. *See Howard v. Louisiana Citizens Prop. Ins. Corp.*, 2010-1302 (La. App. 4 Cir. 4/27/11), 65 So. 3d 697, 704 ("[t]o succeed on a claim of fraudulent inducement, [a plaintiff] has to satisfy all three elements of a fraud action."). The court thus concludes that the so-called "necessity" prong has been satisfied here.

### C. Dischargeability Under 11 U.S.C. § 523 (a)(2)(B)

Having established the collateral estoppel effect in this action of the Louisiana District Court's findings of fact and conclusions of law as to fraudulent misrepresentation, a determination must be made as to whether any genuine issues of material fact remain. If no genuine issues of material fact remain, the court must determine if the plaintiff has demonstrated that it is entitled to judgment as a matter of law on its 11 U.S.C. § 523(a)(2)(B) dischargeability claim.

The plaintiff first argues that no genuine issue of material fact exists and the debt should be excepted from discharge as a matter of law pursuant to 11 U.S.C. § 523(a)(2)(B). Specifically, the plaintiff asserts that the court in the Louisiana District Court Action found that: (i) the defendants made materially false statements, in writing, concerning their personal financial condition; (ii) the defendants had done so in order to fraudulently induce the plaintiff to incur liability as surety for a company wholly owned by the defendants; and (iii) the plaintiff had reasonably relied on the defendants' materially false financial statement in incurring such liability. The plaintiff asserts that "[t]he [defendants'] intent to deceive [the plaintiff] is established by the [defendants'] fraudulent inducement of [the plaintiff, because] . . . [u]nder Louisiana law, an essential element of fraudulent inducement is the 'intent to defraud or gain an unfair advantage.'"

13

The defendants respond that "[e]ven if the District Court Judgment precludes some factual issues from being tried before this Court, the Motion for Summary Judgment cannot be granted because material questions for fact [(sic)] remain to be determined[.]" Under this broad umbrella of pending issues of material fact, the defendants advance several specific individual arguments as outlined below.

The defendants thus first argue that "[t]he fact that [the plaintiff] previously reduced its claim to a judgment does not preclude this Court from inquiring into the true nature of the debt, and ruling contrary to the District Court Judgment." Accordingly, the defendants contend, this court must meet

> [t]wo threshold requirements . . . before the District Court Judgment may be accorded collateral estoppel effect in non-dischargeability [sic] proceedings . . . : (1) the state court judgment must be supported by at least some evidence that can be discerned from the record of the state court proceedings; and (2) the state court judgment, either alone or in conjunction with the rest of the state court record, must indicate that the court actually considered the evidence presented and, based on that evidence, that the state court found facts that prove a non-dischargeable [sic] debt under § 523(a).

Building off of this alleged obligation to go beyond the face of the Louisiana Judgment and instead inquire into its basis and merits, the defendants then suggest that a myriad of resulting genuine issues of material fact necessarily exist that would preclude summary judgment on the plaintiff's instant 11 U.S.C. § 523(a)(2)(B) dischargeability claim.

The defendants' argument is without merit. The Second Circuit cases that the defendants cite on this proposition, *Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2d Cir. 1993) and *Tia Cherie Manzi v. Susan P. Geenty, et al. (In re Manzi)*, 283 B.R. 103 (Bankr. D. Conn. 2002), are factually and legally distinguishable from the instant case. Furthermore, those opinions do not support imposing such a burden in a § 523(a)(2)(B) analysis. Both cases involve the very different issues of nondischargeability of debts attendant to divorce under 11 U.S.C. § 523(a)(5),

14

and indeed neither opinion so much as mentions § 523(a)(2)(B) at any point. Accordingly, these cases are unpersuasive in this matter.

Although an examination of the Louisiana District Court's summary judgment order and case record was necessary to determine whether collateral estoppel should be applied, having now determined that collateral estoppel does in fact apply, it is not necessary for this court to address the merits of the Louisiana District Court's conclusions as to those issues.

The defendants next argue that no evidence of intent to deceive - a required element under § 523(a)(2)(B) - was presented in Louisiana District Court Action and the Louisiana District Court made no findings on intent to deceive. The plaintiff responds that such a finding is inherent in the ruling of the Louisiana District Court because under Louisiana state law fraudulent inducement requires a finding of intent to deceive.

As noted above, under Louisiana law, "[t]o succeed on a claim of fraudulent inducement, [a plaintiff] has to satisfy all three elements of a fraud action." *Howard v. Louisiana Citizens Prop. Ins. Corp.*, 2010-1302 (La. App. 4 Cir. 4/27/11), 65 So. 3d 697, 704. "To state a [Louisiana state law] cause of action for fraud, the following three elements must be alleged: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury." *Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606 (La. App. 4 Cir. 6/4/14), --- S. 3d ----.

The court is also unpersuaded by the defendants' argument regarding the intent to deceive. A claim for fraudulent inducement under Louisiana law, including the fraudulent inducement claim alleged in the Louisiana District Court Action, does involve as a required element the intent to deceive. Any conclusion by the Louisiana District Court that the plaintiff was entitled to judgment as a matter of law on such a fraudulent inducement claim necessarily

also involved an associated conclusion, whether expressly stated or not, that adequate evidence of such intent was shown as to entitle the plaintiff to judgment as a matter of law.

The defendants further argue that they should be entitled to rebuttal on the issue of fraud because this is a § 523(a)(2)(B) action. They assert that a ruling granting the Motion would deny them of that opportunity for rebuttal. In support of this argument, the defendants cite to *In re Furio*, 77 F.3d 622 (2d Cir. 1996). The defendants' argument is unpersuasive. *Furio* is entirely distinguishable from the instant situation in a centrally significant way: In *Furio*, the Second Circuit noted that the bankruptcy court had conducted a full trial. 77 F.3d at 622 (noting that the bankruptcy court's dischargeability decision came "after a bench trial[.]")

In this case, the plaintiff has come forward with a prior federal judgment that it alleges is preclusive of the issues in this dischargeability proceeding. The defendants have contested that asserted preclusiveness. After full consideration of the issue, this court has held, *supra*, that the prior court's findings of fact and conclusions of law are preclusive. To enable the defendants go beyond that question and contest the issue of fraud now would be tantamount to allowing them to relitigate the issues already conclusively determined by the Louisiana District Court.

It is true that the Louisiana District Court decided this and other issues in its decision on a summary judgment motion that the defendants chose, for whatever reason, not to oppose. It is also true that, had the defendant's chosen to respond to and oppose the motion, any arguments and/or genuine issues of material fact they asserted would have been addressed by the Louisiana District Court. To allow the defendants' lack of continued active involvement in the Louisiana District Court Action form the basis to reexamine the merits of that case is unnecessary and unfair to the plaintiff. To hold otherwise would allow and possibly even encourage future litigants to abandon actions they are unsatisfied with, based upon an expectation of being able to

relitigate those same issues in another forum such as this court. The defendants' objection on this ground is therefore overruled.

The defendants next argue that because there was no showing that the inaccurate financial statements were material to the plaintiff's decision to issue the bonds, § 523(a)(2)(B)'s materiality requirement has not been met and a genuine issue of fact remains. The defendants' argument is without merit. The issue of materiality was definitively established by the conclusions of law arrived at by the Louisiana District Court in the Louisiana Judgment. ECF 26-3, Exhibit B to the plaintiff's Motion, at 4, 7-8, 9 (Louisiana Judgment concluding that the plaintiff's "losses resulted from the false written representations defendants made to plaintiff regarding their financial condition" and specifically that the "[d]efendants falsified the amount of collateral security they ow[n]ed, which fraudulently induced plaintiff to execute as surety . . ."); *see also, supra, Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606 (La. App. 4 Cir. 6/4/14), --- S. 3d ---- (under Louisiana law, fraudulent inducement requires, *inter alia*, a showing of reasonable reliance on a misstatement of <u>material fact</u>). This court has already held, *supra*, that these findings of fact and conclusions of law contained in the Louisiana Judgment are entitled to preclusive effect in the instant dischargeability action. Accordingly, no genuine issue of fact remains as to materiality and the defendants' objection on this ground is overruled.[4]

---

[4] The court also rejects the argument that summary judgment should be denied on the grounds that the plaintiff has not proven reliance on the defendants' alleged misstatements. The court is not persuaded by that argument in light of the Louisiana Judgment's findings and conclusions. *See* ECF 26-3, Exhibit B to the plaintiff's Motion, at 8-9 (finding that the plaintiff's "losses resulted from the false written representations defendants made to plaintiff regarding their financial condition," specifically that the "[d]efendants falsified the amount of collateral security they ow[n]ed, which fraudulently induced plaintiff to execute as surety . . . " and concluding, without qualification or limitation, that the plaintiff is "entitle[d] . . . to judgment as a matter of law . . . [and that the] plaintiff's motion for summary judgment should be granted . . . in full."); *see also, supra, Chapital v. Harry Kelleher & Co., Inc.*, 2013-1606 (La. App. 4 Cir. 6/4/14), --- S. 3d ---- (fraudulent inducement under Louisiana state law requires, *inter alia*, <u>reasonable reliance</u> on a misstatement of material fact). The court has held these conclusions of law and findings of fact to have preclusive effect and therefore no genuine issue of material fact remains to be tried.

Therefore, the court concludes that no genuine issue of material fact exists regarding the plaintiff's claim that its debt is nondischargeable under 11 U.S.C. § 523(a)(2)(B). Additionally, in light of the preclusive effect of the findings of fact and conclusions of law of the Louisiana District Court, the court also concludes that the undisputed facts further establish that the plaintiff is entitled to judgment as a matter of law on its dischargeability claim. The Motion is granted and summary judgment will enter in favor of the plaintiff.

## VI. Conclusion

For the reasons stated above, the plaintiff's Motion for Summary Judgment, ECF 26, is hereby **GRANTED** and the defendants' objection to that motion, ECF 38, is hereby **OVERRULED**. The court having thus concluded that no genuine issue of material fact exists and that the plaintiff is entitled to judgment as a matter of law on the Complaint, judgment shall therefore enter in the plaintiff's favor and the defendants' debt to the plaintiff in the amount of $1,820,338.39 plus interest from the date of the Louisiana Judgment, is **NONDISCHARGEABLE** under 11 U.S.C. § 523(a)(2)(B).

**IT IS SO ORDERED.**

By the Court,

Dated: September 12, 2014

Julie A. Manning
Chief United States Bankruptcy Judge